IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN W.,[1]                                    6:19-cv-00584-BR

        Plaintiff,                              OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

        Defendant.


**KEVIN KERR**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

        Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

_____

        [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**MICHAEL S. HOWARD**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S221A
Seattle, WA 98104-7075
(206) 615-2539

            Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Brian W. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.

For the reasons that follow, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.


## ADMINISTRATIVE HISTORY

Plaintiff filed his applications for SSI and DIB on July 28, 2015.  Tr. 203, 208.[2]  Plaintiff alleged a disability onset date of January 1, 2010.  His applications were denied initially and on reconsideration.  An Administrative Law Judge

---

[2] Citations to the official transcript of record filed by the Commissioner on October 2, 2019, are referred to as "Tr."

(ALJ) held a hearing on November 7, 2017.  Tr. 35-65.  Plaintiff
and a vocational expert (VE) testified at the hearing, and
Plaintiff was represented by an attorney.

On March 27, 2018, the ALJ issued an opinion in which she
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 10-34.  On February 22, 2019, that decision
became the final decision of the Commissioner when the Appeals
Council denied Plaintiff's request for review.  Tr. 1-6.  *See*
*Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on July 22, 1982.  Tr. 203.  Plaintiff
was 35 years old at the time of the hearing.  Plaintiff has a
high-school education.  Tr. 39.  Plaintiff has past relevant work
experience as a produce clerk.  Tr. 27.

Plaintiff alleges disability due to ulcerative colitis,
sleep apnea, depression, asthma, and pancreatitis.  Tr. 242.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 20-24.


## STANDARDS

The initial burden of proof rests on the claimant to

establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving

ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff engaged in work after his January 1, 2010, onset date, but "this work activity did not rise to the level of substantial gainful activity." Tr. 16.

At Step Two the ALJ found Plaintiff has the severe impairments of ulcerative pancolitis, morbid obesity, obstructive sleep apnea, asthma, depression, and anxiety. Tr. 16. The ALJ found Plaintiff's hiatal hernia and hyperlipidemia are not severe impairments. Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically

determinable impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 18.  The ALJ found Plaintiff has the RFC to perform light work with the following limitations:  frequent kneeling, crouching, crawling, and climbing ramps and stairs; occasional stooping and contact with the general public; never climbing ladders, ropes, or scaffolds; avoiding concentrated exposure to extreme cold and pulmonary irritants; avoiding all exposure to workplace hazards such as heights and heavy machinery; and understanding, remembering, and carrying out simple, routine, repetitive tasks.  Tr. 18.

At Step Four the ALJ found Plaintiff is unable to perform his past work.  Tr. 27.

At Step Five the ALJ found Plaintiff can perform other work that exists in the national economy.  Accordingly, the ALJ concluded Plaintiff is not disabled.  Tr. 28.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) partially rejected the opinions of Lloyd Wiggins, M.D., and William Nisbet, M.D., reviewing physicians; and (3) rejected the opinions of Bruce Williams, M.D., treating physician.

## I. The ALJ did not err when she partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that on "a good day" he

has 16-to-20 stools and is in the bathroom for 45-to-60 minutes. Tr. 56. Plaintiff has accidents in which he cannot control his bowel movements approximately four times per month. Plaintiff sleeps two or three hours per night because he has to wear a CPAP and gets up three or four times to use the bathroom. Plaintiff stated "a couple of times a year" his condition will become so bad that he will stay on the couch for "a week or two and [his] girlfriend will come and bring [his] meals and . . . change [him]" when he has an accident. Tr. 47. The "portion of [an] average year [that he is] having these days where [he] can't get out of bed and [his] girlfriend is helping out" is three months out of the year. Tr. 51. Plaintiff is unable to bend over or reach for things frequently because it loosens his colon and then he can have accidents and/or need to go to the bathroom frequently. Plaintiff's hobbies are listening to music or watching movies at home "where [he has] the bathroom right there." Tr. 48. Plaintiff can walk for fifteen minutes before having to take a break, can stand for 40 minutes, and can sit for an unlimited time. Plaintiff is employed dealing cards two or three times per month for two or three hours per time. Plaintiff, however, turns down opportunities to deal cards approximately ten times per year because he is concerned about having an accident. Plaintiff wears Depends two or three times per month "when [he is] having a bad week or so." Tr. 42.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 19.

The ALJ noted Plaintiff's symptoms wax and wane, but he has a history of noncompliance with medication.  For example, the ALJ noted Plaintiff requested a work release in December 2010 and stated he had "not had any trouble with diarrhea or abdominal pain for at least six months" and his bowel movements were "normal."  Tr. 632.  In July 2013 Plaintiff reported to Mark Gonsky, D.O., treating osteopath, that he "stopped [taking] medications on his own and felt like [his ulcerative colitis had] resolved."  Tr. 434.  Plaintiff informed Dr. Gonsky that he "had been without problems for almost 1 year."  Tr. 434.  Plaintiff, however, was experiencing a "return of pain in abdomen and diarrhea with bleeding."  Tr. 434.  Dr. Gonsky started Plaintiff on Pentasa to treat his ulcerative colitis.  In October 2013 Plaintiff reported to Dr. Gonsky that he had stopped Pentasa "and has been doing well."  Tr. 431.  Plaintiff was taking Lomotil for diarrhea, but he was not taking any medication for his ulcerative colitis.  On February 26, 2014, Plaintiff told Dr. Gonsky that he still was not taking Pentasa and that he had "not been taking

Lamotil on a regular basis." Tr. 428. Plaintiff reported "in the last several weeks he has started to have increased abdominal pain, sudden urge to defecate, and occasional hematochezia." Tr. 428. Dr. Gonsky advised Plaintiff to resume taking Pentasa.

On April 1, 2014, Plaintiff told Sidney Henderson, M.D., treating physician, that he had "been in a[n ulcerative colitis] flare for the last 2 years." Tr. 560. Plaintiff stated he was having "about 16 stools per day" and that "he stopped Remicade three years [earlier] because he was doing well." Tr. 560. Dr. Henderson noted this was a "not unexpected recurrence of fairly severe symptoms of chronic ulcerative colitis in a patient that almost needed a colectomy 4 years ago and then stopped his maintenance therapy because he was doing well." Tr. 560. Dr. Henderson recommended Plaintiff begin taking Humira and emphasized the "importance of compliance and maintenance" of medication. Tr. 560. On April 22, 2014, Plaintiff reported to the emergency room (ER) with "bloody stools for the past 5 days." Tr. 476. Plaintiff stated he was having 20 bowel movements per day and "this last occurred 4 years ago and he was treated in the hospital with steroids." Tr. 476. Kevin Jones, M.D., started Plaintiff on oral steroids and recommended he follow up with his gastroenterologist. At the end of his ER visit Plaintiff "felt better and was using his computer." Tr. 485.

Plaintiff began taking Humira on May 7, 2014. On June 5,

2014, he reported he was "doing much better than prior to Humira" although he was still having 12 bowel movements per day. Tr. 558. On June 8, 2014, Plaintiff reported his "bowels have been stable." Tr. 466.

On October 21, 2014, Plaintiff reported to Jennifer Turk, P.A., that he was having "17 diarrhea episodes daily." He noted his pharmacist told him not to take Humira while he had a chest cold, and, therefore, he had stopped taking Humira on September 11, 2014. Tr. 554. P.A. Turk advised Plaintiff to restart Humira.

Beginning March 19, 2015, Plaintiff "improved on Humira weekly . . . for two months." Tr. 547. Plaintiff had "5-6 BM a day[, but] less urgency and no more nocturnal stooling or accidents." Tr. 547. On June 24, 2015, Plaintiff continued to take Humira and reported to Dr. Henderson that he had "6-8 stools a day, occasional blood[, but] no nocturnal BM or significant urgency." Tr. 544. On October 26, 2015, Bruce Williams, M.D., treating physician, reported Plaintiff continued to take Humira, "is much improved with this," and "has 4 BMs daily." Tr. 1165.

On May 25, 2016, Dr. Henderson noted Plaintiff "had improved on Humira but remained symptomatic." Tr. 1174. Plaintiff advised Dr. Henderson that his insurance company had "denied his Humira because he still had symptoms on it," and he ran out of Humira four weeks earlier. Tr. 1174. As a result, Plaintiff was

having "diarrhea up to 8 times a day." Tr. 1174. Dr. Henderson
advised Plaintiff to begin taking Humira again. On August 9,
2016, Dr. Williams noted Plaintiff's ulcerative colitis had
worsened since his Humira "was decreased to every other week" by
his insurance company. Tr. 1156.

On October 4, 2016, Laurel Hartwell, M.D., treating
physician, noted Plaintiff had been "[o]ut of humira for 3-4
months due to drug company denial [and that he] had been taking
[it] weekly with well-controlled symptoms. Now back on since
5/2016, but only every other week and not weekly as before."
Tr. 1051. Dr. Hartwell noted Plaintiff had undergone "Anser
testing on 8/29/16 with serum levels of 2.3 and negative antibody
levels." Tr. 1051. Dr. Hartwell reported Plaintiff did not have
any "Humira antibodies present," and, therefore, "low serum
levels likely explain [Plaintiff's] ongoing symptoms." Tr. 1050.
Dr. Hartwell stated the level of Humira that is adequate to
control Plaintiff's symptoms "has been a moving target, but
clearly current levels not adequate." Tr. 1050. Dr. Hartwell
noted Plaintiff "has in fact responded to Humira in the past and
[because he] does not have antibodies [present in his system], I
believe we should maximize Humira." Tr. 1050. Dr. Hartwell
submitted a request to Plaintiff's insurance to increase his
Humira dose to weekly rather than every other week and concluded:

> If humira denied by insurance or no response after
> 2-3 months of weekly dosing, consider repeat

> humira levels and antibodies, and then possible
> golimumab vs vedoluzimab.  Benefit of vedoluzimab
> would be scheduled infusions given his history of
> spotty compliance.

Tr. 1050.

On November 4, 2016, Dr. Henderson reported Plaintiff "is improved back on [weekly] Humira but certainly not in clinical remission."  Tr. 1183.  Specifically, Plaintiff reported he was having fifteen stools per day.  On December 27, 2016, Plaintiff reported to Dr. Henderson that he was having "8-9 small urgent stool [*sic*] per day, no accidents, rare blood, rare nocturnal stool."  Tr. 1186.  On February 13, 2017, Dr. Henderson noted Plaintiff's insurance company had approved him for weekly Humira, and Plaintiff had been on it for approximately eight weeks. Plaintiff was "definitely improved.  He is having 3-5 soft but formed stools a day with rare diarrhea and no bleeding.  He has no nocturnal BM and minimal urgency without accidents." Tr. 1188.  Dr. Henderson stated Plaintiff was "almost in clinical remission."  Tr. 1189.  On September 15, 2017, Plaintiff reported to Dr. Hartwell that a month earlier he "had bad blood in the stool for 3 days, [but it] went away on its own [and he] didn't call GI clinic."  Tr. 1191.

The ALJ concluded the overall medical evidence was inconsistent with Plaintiff's testimony at the November 2017 hearing that Humira was ineffective in controlling his symptoms, that he has 16-to-20 stools per day, that he is in the bathroom

for 45 to 60 minutes a day, that he has accidents in which he cannot control his bowel movements approximately four times per month, and that he has to get up three or four times a night to use the bathroom.

The Court finds on this record that the ALJ did not err when she partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms during the relevant period because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## II.  Reviewing and Treating Physicians.

As noted, Plaintiff contends the ALJ erred when she partially rejected the opinions of Drs. Wiggins and Nisbet, reviewing physicians, and rejected the opinions of Dr. Williams, treating physician.

### A.  Drs. Wiggins and Nisbet

Plaintiff contends the ALJ erred when she partially rejected the opinions of Drs. Wiggins and Nesbit.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec.*

*Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

On September 28, 2105, Dr. Nisbet reviewed Plaintiff's medical record to assess Plaintiff's claim for DIB. Dr. Nisbet found Plaintiff had the RFC to lift 10 pounds; to climb ramps or stairs, to balance, to kneel, to crouch, and to crawl frequently; to lift 25 pounds and to stoop occasionally; to stand and/or to walk for six hours in an eight-hour workday; and to sit for six hours in an eight-hour work day. In the portion of the DIB RFC form that asked Dr. Nisbet to "[e]xplain postural limitations and how and why the evidence supports your conclusions. Cite specific facts up on which your conclusions are based," he noted Plaintiff's limitations were due to asthma and obesity. Dr. Nisbet included an "additional explanation" for his assessment of Plaintiff's RFC: "[Plaintiff] should have access to restroom." Tr. 79. On September 28, 2015, Dr. Nisbet evaluated Plaintiff's claim for SSI. Dr. Nisbet assessed Plaintiff with the same postural limitations as set out in the DIB RFC form and noted those limitations were due to Plaintiff "needing access to restroom d/t IBD." Tr. 94.

On December 16, 2015, Dr. Wiggins reviewed Plaintiff's medical record for reconsideration of the Commissioner's denial of Plaintiff's claims for SSI and DIB. Dr. Wiggins found

Plaintiff had the RFC to lift 10 pounds; to balance, to kneel, to crouch, to crawl, and to climb ramps or stairs frequently; to lift 25 pounds and to stoop occasionally; to stand and/or to walk for six hours in an eight-hour workday; and to sit for six hours in an eight-hour work day.  In the portion of the RFC form that asked Dr. Wiggins to "[e]xplain postural limitations and how and why the evidence supports your conclusions.  Cite specific facts up on which your conclusions are based," he noted Plaintiff's limitations were "d/t [due to] needing access to restroom d/t IBD."  Tr. 113, 129.

The ALJ assigned "some weight" to the opinions of Drs. Nesbit and Wiggins and limited Plaintiff to light-level exertion with additional limitations that are generally more restrictive than those assessed by Drs. Nesbit and Wiggins.  The ALJ, however, did not include in her evaluation of Plaintiff's RFC a requirement that Plaintiff have ready access to a bathroom nor did she include that requirement in her hypotheticals to the VE.  Plaintiff alleges the ALJ erred when she failed to explain the exclusion of the bathroom requirement in her assessment of Plaintiff's RFC.

Defendant asserts the statements of Drs. Nesbit and Wiggins that Plaintiff needs ready access to a bathroom are not stand-alone limitations, but rather justifications for Plaintiff's other physical restrictions that the ALJ included in

her assessment of Plaintiff's RFC.  According to Defendant, therefore, ready access to a bathroom is implicitly included in the ALJ's assessment of Plaintiff's RFC.  The record, however, does not support Defendant's assertion.  Specifically, the ALJ asked the VE a number of hypotheticals, but she never included any requirement that the individual have ready access to a restroom.  Although the VE found an individual with the limitations set out by the ALJ in her hypotheticals could perform the jobs of bench assembler, garment sorter, and small-parts assembler, the VE also noted none of those jobs "allow for ready access to a restroom."  Tr. 62.  Nevertheless, the ALJ found Plaintiff could perform each of those jobs.  Thus, the ALJ did not appear to adopt implicitly the limitation that Plaintiff required ready access to a restroom.  Moreover, the ALJ did not provide any explanation as to why she failed to include the access-to-restroom limitation in her evaluation of Plaintiff's RFC.

On this record the Court concludes the ALJ erred when she rejected those portions of the opinions of Drs. Nesbit and Wiggins in which they found Plaintiff needs ready access to a restroom because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.   Dr. Williams**

Plaintiff contends the ALJ erred when she gave "no weight" to the July 2014 and November 2017 opinions of Dr. Williams, treating physician.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

**1.   July 7, 2014, letter**

On July 7, 2014, Dr. Williams drafted a letter in which he stated Plaintiff has

> severe ulcerative pancolitis which has been refractory to treatment.  He is under the care of a gastroenterologist and has recently been changed to Humira to try to control his symptoms.  He continues to have abdominal pain of variable severity on a daily basis and an average of about 12 bowel movements daily.  In addition he has had chronic depression mostly related to his illness and the physical and financial problems it causes. Between these two problems I do not think that he will be gainfully employable in the next year. Hopefully treatment will improve his situation gradually in the future but there is no indication

of that happening yet.  He has not been employed
in over 4 years.

Tr. 444.  The ALJ did not give any weight to Dr. Williams's
opinion on the ground that it was unsupported by the medical
record at the time.  As noted, in July 2013 Plaintiff reported to
Dr. Gonsky that he "stopped [taking] medications on his own and
felt like [his ulcerative colitis had] resolved."  Tr. 434.
Plaintiff informed Dr. Gonsky that he "had been without problems
for almost 1 year."  Tr. 434.  Plaintiff, however, was
experiencing a "return of pain in abdomen and diarrhea with
bleeding."  Tr. 434.  Dr. Gonsky started Plaintiff on Pentasa to
treat his ulcerative colitis.  In October 2013 Plaintiff reported
to Dr. Gonsky that he had stopped taking Pentasa "and has been
doing well."  Tr. 431.  Plaintiff was taking Lomotil for
diarrhea, but was not taking any medication for his ulcerative
colitis.  On February 26, 2014, Plaintiff told Dr. Gonsky he
still was not taking Pentasa and had "not been taking Lamotil on
a regular basis."  Tr. 428.  Plaintiff reported "in the last
several weeks he has started to have increased abdominal pain,
sudden urge to defecate, and occasional hematochezia."
Tr. 428.  Dr. Gonsky advised Plaintiff to resume taking Pentasa.
On April 1, 2014, Plaintiff told Dr. Henderson that he was
having "about 16 stools per day" and that "he stopped Remicade
three years [earlier] because he was doing well."  Tr. 560.
Dr. Henderson recommended Plaintiff begin taking Humira again and

emphasized the "importance of compliance and maintenance" of medication. Tr. 560. Plaintiff began taking Humira on May 7, 2014, and on June 5, 2014, he reported he was "doing much better than prior to Humira." Tr. 558. On June 8, 2014, Plaintiff reported his "bowels have been stable." Tr. 466. The ALJ also noted the record established Plaintiff's symptoms improved considerably when he consistently took Humira. Finally, the ALJ noted Dr. Williams's July 2014 opinion was limited to a year, and in it Dr. Williams suggested Plaintiff's condition might improve.

On this record the Court concludes the ALJ did not err when she did not give any weight to Dr. Williams's July 2014 opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

### 2. November 2017 Opinion

On November 10, 2017, Dr. Williams completed an RFC Form in which he declined to opine on Plaintiff's ability to complete any physical tasks such as lifting, sitting, or standing. Dr. Williams, however, stated Plaintiff's "concentration would be impaired to such a degree that he could not be expected to perform even simple work tasks" twenty percent of an eight-hour work day and that Plaintiff would miss two days of work per month. Tr. 1225. Dr. Williams explained "due to diarrhea and abdominal pain work attendance would be difficult," and Plaintiff's "bowel disease markedly limits his

employability."  Tr. 1225.

The ALJ did not give any weight to Dr. Williams's opinion on the grounds that it is inconsistent with the medical record and with Dr. Williams's notes.  Specifically, when Plaintiff was consistently taking Humira once a week, his condition improved.  For example, on November 4, 2016, Dr. Henderson reported Plaintiff "is improved back on [weekly] Humira but certainly not in clinical remission."  Tr. 1183.  On December 27, 2016, Plaintiff reported to Dr. Henderson that he was having "8-9 small urgent stool [*sic*] per day, no accidents, rare blood, rare nocturnal stool."  Tr. 1186.  On February 13, 2017, Dr. Henderson reported Plaintiff was "definitely improved. He is having 3-5 soft but formed stool a day with rate diarrhea and no bleeding.  He has no nocturnal BM and minimal urgency without accidents."  Tr. 1188.  Dr. Henderson stated Plaintiff was "almost in clinical remission."  Tr. 1189.
On September 15, 2017, Plaintiff reported to Dr. Hartwell that a month earlier he "had bad blood in the stool for 3 days, [but it] went away on its own [and he] didn't call GI clinic."  Tr. 1191.

On this record the Court concludes the ALJ did not err when she did not give any weight to Dr. Williams's opinions because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

## <u>REMAND</u>

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are necessary because the ALJ failed to address the reviewing

physicians' opinions that Plaintiff must have ready access to the bathroom or to include that limitation in either her assessment of Plaintiff's RFC or in her hypotheticals to the VE. Thus, the Court concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ to resolve the ambiguities in her decision.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 28 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 25th day of March, 2020.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge